IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| MELVINA SPAIN DOILEY,<br><br>Plaintiff,<br>vs.<br><br>HEALTH CARE PARTNERS OF<br>SOUTH CAROLINA, INC.,<br><br>Defendant. | Civil Action No. 4:25-cv-11702-JD-MHC<br><br><br>**ORDER AND OPINION** |

This matter is before the Court on the Report and Recommendation ("Report") of the United States Magistrate Judge Thomas E. Rogers, III, issued pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 (D.S.C.). (DE 11.) The Report concerns Defendant Health Care Partners of South Carolina, Inc.'s Motion to Dismiss. (DE 7.) The Report recommends denying the motion as to Plaintiff's race discrimination claim arising from her work-from-home request and granting it as to the remaining claims. Both parties filed timely objections. (DE 14; DE 15.)

After the Report was issued, Plaintiff moved for leave to amend her Complaint. (DE 13.) That motion remains pending before the Magistrate Judge. The Court will resolve DE 7 and the objections now, based on the operative Complaint. It does not adjudicate DE 13 or assess whether the proposed amended complaint cures the pleading deficiencies identified here, is administratively exhausted, or would otherwise be futile. For the reasons below, the Court adopts the Report as modified, denies Defendant's Motion to Dismiss as to the work-from-home discrimination claim, and grants the motion as to the remaining claims.

1

## A.     Background

At the Rule 12(b)(6) stage, the Court accepts the Complaint's well-pleaded factual allegations as true and draws reasonable inferences in Plaintiff's favor.

Plaintiff, an African American woman, began working for Defendant in May 2017 and is employed as a Senior Accountant. She alleges that she has performed satisfactorily, has not received significant discipline or negative performance reviews, and since 2021 has performed managerial or Director/Manager of Finance duties without the corresponding title or compensation. (DE 1 ¶¶ 6, 9, 13-18.) She also alleges that Caucasian employees received promotions, increased compensation, or other favorable treatment under circumstances in which she did not. (*Id.* ¶¶ 19, 27-29, 34.)

Plaintiff also alleges that in November 2023 she requested permission to work from home. Defendant required her to complete a questionnaire elaborating on the basis for that request. Plaintiff alleges that a Caucasian female employee was not required to complete a questionnaire and was permitted to work from home, and that two Caucasian male employees likewise were permitted to work from home without completing one. (DE 1 ¶ 20.) Plaintiff later alleges that her own request was denied. (*Id.* ¶ 44.)

In December 2023, Plaintiff inquired about promotion to a managerial position and was told she did not meet the qualifications, notwithstanding her allegation that she had performed managerial duties for about two years. (DE 1 ¶¶ 21-22.) She also alleges more generally that some Caucasian employees obtained positions without

applying or interviewing and that Defendant created or filled certain positions without posting them or using an equitable selection process. (*Id.* ¶¶ 19, 27.) Plaintiff also alleges that she saw a social media posting for a Chief Operating Officer position and later was told the position had been filled. (*Id.* ¶¶ 30-31.)

Plaintiff alleges that she filed an EEOC charge in January 2024 and later received a Notice of Right to Sue. (DE 1 ¶¶ 11-12, 23.) Defendant attached a copy of a January 18, 2024, Charge of Discrimination to its Motion to Dismiss. (DE 7-2.) As explained below, the Court considers DE 7-2 only to the extent necessary to address the administrative exhaustion issue raised by Defendant; it does not treat factual statements in that exhibit as additional allegations supporting or defeating the substantive merits of the claims pleaded in DE 1.

Plaintiff alleges that, after filing the Charge, Defendant retaliated against her by failing to promote her, increasing her duties, delaying evaluations and raises, subjecting her to heightened scrutiny, and reducing her Christmas bonus. (DE 1 ¶¶ 23-26.) She further alleges that the CEO made remarks in meetings about unhappy employees needing to leave and asked, in reference to Plaintiff, "Who would file a claim and still be at a job you didn't like." (*Id.* ¶ 24.) In Count I, Plaintiff also characterizes the post-Charge conduct as a retaliatory hostile work environment. (*Id.* ¶¶ 45, 48.)

Defendant moved to dismiss the Complaint under Rule 12(b)(6). (DE 7.) Plaintiff opposed the motion, and Defendant replied. (DE 8; DE 9.) The Magistrate Judge later issued the present Report. (DE 11.)

**B.   Report and Recommendation**

The Report first addressed exhaustion. It concluded that Plaintiff's post-Charge retaliation allegations were not barred merely because Plaintiff had not separately exhausted a new EEOC charge alleging retaliation for filing the first Charge. It also concluded that, to the extent Plaintiff attempted to assert a distinct race-based hostile-work-environment claim, that theory was outside the scope of her administrative Charge. The Report treated Plaintiff's allegations of a hostile work environment resulting from her filing the EEOC Charge as a retaliation theory properly before the Court. (DE 11 at 5-7.)

On the merits, the Report concluded that Plaintiff sufficiently pleaded race discrimination arising from Defendant's handling and alleged denial of her work-from-home request. Relying on *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), the Report reasoned that Title VII does not require a plaintiff to show significant or substantial harm to an employment term or condition and that the alleged denial of a work-from-home arrangement could satisfy the governing standard. (DE 11 at 8-9.)

The Report recommended dismissal of Plaintiff's failure-to-promote theory because the Complaint did not allege that Plaintiff applied for the promotion at issue. (DE 11 at 9-10.) It also recommended dismissal of Plaintiff's discrete retaliation theories because the allegations of increased duties, delayed evaluations and raises, heightened scrutiny, and failure to promote were stated in largely general terms without sufficient factual support. As to the reduced Christmas bonus, the Report concluded that the approximately eleven-month period between the January 2024

4

Charge and the alleged reduction was insufficient, standing alone, to support a plausible inference of retaliation. (*Id.* at 10-11.)

Finally, the Report recommended dismissal of Plaintiff's retaliatory-hostile-work-environment theory, concluding that the conduct alleged did not amount to the type of intimidation, ridicule, or insult necessary to establish a hostile work environment. (DE 11 at 12.) The Report, therefore, recommends that Defendant's motion be denied only as to the work-from-home discrimination claim and granted as to all remaining claims. (*Id.* at 13.)

## C.    Standards of Review

A magistrate judge's recommendation has no presumptive weight, and responsibility for the final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court conducts de novo review of those portions of the Report to which a party makes a specific written objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The Court may accept, reject, or modify the recommended disposition, in whole or in part. 28 U.S.C. § 636(b)(1). In the absence of a specific objection, the Court need only determine that no clear error appears on the face of the record before accepting the recommendation. *Diamond v. Colonial Life & Accident Insurance Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

A Rule 12(b)(6) motion tests the legal sufficiency of the operative complaint. To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts well-pleaded factual allegations as true and draws

reasonable inferences in the plaintiff's favor, but it need not accept legal conclusions or naked assertions devoid of factual enhancement. *Id.* at 678-79.

Ordinarily, Rule 12(b)(6) review is limited to the complaint and documents attached to or incorporated into it. A court may also consider a document submitted by the movant if the document is integral to the complaint and its authenticity is undisputed. *Goines v. Valley Community Services Board*, 822 F.3d 159, 165-66 (4th Cir. 2016); *Philips v. Pitt County Memorial Hospital*, 572 F.3d 176, 180 (4th Cir. 2009). A document is integral when the plaintiff's claims turn on, or are otherwise based on, statements contained in the document. *Goines*, 822 F.3d at 166. Here, the Complaint expressly pleads administrative exhaustion by reference to an EEOC charge and right-to-sue notice. (DE 1 ¶¶ 11-12.) The Court, therefore, may consider DE 7-2 for that limited exhaustion inquiry. The substantive discrimination and retaliation claims, however, do not turn on the factual recitations in the Charge, and the Court does not use those recitations to supplement or contradict the facts alleged in the operative Complaint when evaluating the merits under Rule 12(b)(6).

An employment-discrimination plaintiff need not plead each element of the *McDonnell Douglas* prima facie case to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). But Rule 8 still requires factual allegations that make unlawful discrimination plausible rather than merely possible. *Johnson v. Baltimore City, Maryland*, 163 F.4th 808, 814 (4th Cir. 2026); *McCleary-Evans v. Maryland Department of Transportation*, 780 F.3d 582, 585-88 (4th Cir. 2015).

### D.    Objections and Discussion

Plaintiff objects that the Report applied a pleading burden more appropriate to summary judgment, that her failure-to-promote and retaliation allegations satisfy Rule 8, and that the absence of a formal application does not necessarily defeat her promotion theory because Defendant allegedly did not consistently use a formal selection process. She also argues that amendment should be permitted before dismissal. (DE 14 at 5-10.)

Defendant objects only to the recommendation that the work-from-home discrimination claim survives. It argues that the Report addressed whether denial of remote work could constitute actionable harm under *Muldrow* but did not address Defendant's separate contention that the alleged white comparators were insufficiently pleaded. Defendant emphasizes that the Complaint does not identify the comparators' positions, supervisors, reasons for requesting remote work, duration of their arrangements, or the persons who approved their requests. (DE 15 at 3-10.) Plaintiff responds that Defendant is demanding evidentiary detail not required at the pleading stage and that the alleged differential treatment concerning the same work-from-home process is enough to support an inference of race discrimination. (DE 19 at 1-4.)

####    1.    The pending Motion to Amend does not prevent resolution of the present Report.

Plaintiff argues that dismissal should not occur without first allowing amendment and notes that she requested leave to amend in her opposition to the motion to dismiss. (DE 14 at 5, 10.) Defendant responds that no motion to amend was

7

pending when the Report was issued on May 8, 2026, and that Plaintiff did not file DE 13 until after the Report. (DE 22 at 2-3.) The Report itself noted that Plaintiff had requested an opportunity to amend but had not filed a motion to amend. (DE 11 at 13 n.2.) The Court, therefore, evaluates the Report against the operative Complaint that was before the Magistrate Judge.

The procedural landscape has since changed. Plaintiff filed her Motion to Amend together with a proposed amended complaint containing additional factual allegations. (DE 13; DE 13-1.) Defendant opposes amendment on futility and exhaustion grounds, among other things, and Plaintiff has replied. (DE 21; DE 23.) The motion is fully briefed.

The existence of the later-filed motion does not require continued delay in resolving the Report. DE 7 asks whether the operative Complaint states claims under Rule 12(b)(6); DE 13 asks whether Plaintiff should receive leave to replace that pleading with a proposed amended complaint. The Court decides the former question now and leaves the latter for separate resolution.

Accordingly, the Court does not use allegations appearing for the first time in the proposed amended complaint to determine whether the operative Complaint survives DE 7. Conversely, dismissal of claims from the operative Complaint does not decide whether the proposed amendment cures the deficiencies identified here. Nothing in this Order adjudicates DE 13, including Defendant's arguments concerning futility, exhaustion, or the sufficiency of the proposed allegations.

### 2. Plaintiff plausibly alleges race discrimination concerning her work-from-home request.

Defendant's objection identifies an issue that the Report did not squarely address. The Report focused on whether the alleged denial of remote work could constitute actionable harm under *Muldrow*. Defendant separately argued that the Complaint lacks enough comparator detail to support a plausible inference that race caused any difference in treatment, relying principally on *Swaso*, *Coleman*, and *McCleary-Evans*. Defendant raised that comparator argument in its original motion and reply and renews it in its objections. (DE 7-1 at 12-13; DE 9 at 8-13; DE 15 at 3-10.) Plaintiff answers that Defendant is effectively requiring a fully developed prima facie case and that comparator details such as the reasons for and duration of the remote-work requests are matters for discovery. (DE 19 at 2-4.) The Court reviews the causation issue de novo.

Title VII makes it unlawful for an employer to discriminate against an employee because of race with respect to the employee's "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). *Muldrow* rejected any requirement that the disadvantage be significant, substantial, or serious; the employee need show only some disadvantageous change respecting an identifiable term or condition of employment. 601 U.S. at 350, 354-59.

Plaintiff plausibly alleges the threshold disadvantage required by *Muldrow*. Paragraph 20 states that Defendant required Plaintiff to complete a questionnaire concerning her work-from-home request, and paragraph 44 alleges that Defendant denied the request. (DE 1 ¶¶ 20, 44.) Taken together and accepted as true, those

9

allegations plausibly describe some disadvantage respecting an identifiable term or condition of employment. *See Muldrow*, 601 U.S. at 350, 354-59. Defendant relies on statements in the Charge concerning Plaintiff's later decision to seek short-term leave. (DE 15 at 1 n.1.) But for the reasons stated above, the Court does not use DE 7-2 to supplement or contradict the substantive allegations of DE 1. The operative Complaint itself adequately alleges the required threshold harm.

The closer question is discriminatory causation. Defendant is correct that *Johnson v. Baltimore City, Maryland* did not dispense with the requirement that a comparator comparison be meaningful. Rather, *Johnson* reiterated *Swaso*'s requirement of "sufficient commonalities on the key variables" and recognized such considerations as common standards, supervision, positions, and relevant circumstances. 163 F.4th 808, 815-18 (4th Cir. 2026) (quoting *Swaso v. Onslow County Board of Education*, 698 F. App'x 745, 748 (4th Cir. 2017)). *Johnson* rejected a perfect one-to-one match where the complaint alleged that the plaintiff and the proposed comparators were all Baltimore police officers subject to the same standards and described similar misconduct and materially different discipline. *Id.* at 817-18. The operative Complaint here contains much less comparator detail, so Defendant's reliance on *Swaso* presents a substantial pleading question.

The Complaint does not identify the white employees' positions, supervisors, reasons for requesting remote work, duration of their arrangements, or the persons who approved their requests. (DE 15 at 9-10.) Those omissions cannot simply be deferred to discovery; *Swaso* confirms that a plaintiff relying only on bare comparator

10

allegations must plead enough commonality to support a meaningful inference. 698 F. App'x at 748-49. At the same time, *Swaso* also recognizes that a plaintiff need not establish discrimination exclusively through comparator evidence if the complaint supplies other facts supporting an inference of discriminatory motive. *Id.* at 748.

Here, Plaintiff alleges more than the bare proposition that employees of another race received a more favorable result. She alleges that she and three Caucasian employees sought the same category of workplace arrangement - permission to work from home - and that Defendant imposed a questionnaire requirement on her that it did not impose on those three employees, whose requests were granted. (DE 1 ¶ 20.) Those allegations identify the precise procedural difference Plaintiff attributes to race, even though they do not plead every variable that may ultimately bear on whether the employees were similarly situated.

Paragraph 20 also does not stand alone. The Complaint alleges that Defendant's former COO observed that departments staffed predominantly by Caucasian employees were afforded flexible four-day schedules while IT and Accounting, allegedly staffed mostly by minorities, were not afforded that flexibility. (DE 1 ¶ 27(e).) It also alleges that Defendant's CEO responded to a request for greater diversity by stating that "the organization was going down because the place was run by blacks." (*Id.* ¶ 32(b).) The Complaint does not allege when that statement was made or connect either allegation to the November 2023 work-from-home decision, so the Court does not treat them as direct evidence of that decision. They do, however, provide additional pleaded context concerning race and workplace scheduling beyond

11

the bare fact that the proposed comparators are Caucasian. *Cf. Swaso*, 698 F. App'x at 748 (recognizing that an inference of discrimination may be established through means other than comparator evidence); *McCleary-Evans v. Maryland Department of Transportation*, 780 F.3d 582, 585-88 (4th Cir. 2015).

Considering the allegations together, the Court concludes that this narrowly pleaded theory crosses the Rule 8 plausibility threshold. This conclusion does not hold that the three employees are established comparators, nor does it read *Johnson* to relax *Swaso*'s requirement of meaningful similarity. It holds only that the alleged difference in the same type of workplace request, combined with the additional racial and scheduling context pleaded elsewhere in the Complaint, permits a reasonable inference of race discrimination at this stage. Whether the employees were subject to the same standards, sought remote work for comparable reasons, shared relevant supervisors or decision-makers, or were otherwise similarly situated may be tested on a developed record.

Accordingly, Defendant's objection is overruled, and its Motion to Dismiss is denied as to Plaintiff's race-discrimination claim arising from the handling and alleged denial of her work-from-home request.

### 3.    The operative Complaint does not plausibly state a failure-to-promote claim.

Plaintiff objects to the recommended dismissal of her failure-to-promote theory. She argues that *Williams v. Giant Food Inc.*, 370 F.3d 423, 430 (4th Cir. 2004) relaxes the formal application requirement where an employer does not consistently post vacancies or use a formal selection process, and she relies on allegations that

some Caucasian employees were placed into positions without applying or interviewing. (DE 14 at 8-9; DE 1 ¶¶ 19, 27.) Defendant responds that *Williams* does not excuse the absence of an application where Plaintiff knew of the opportunities at issue and merely made general inquiries. (DE 22 at 3-4, incorporating DE 9 at 6-10.)

*Williams* recognizes both propositions. Ordinarily, a failure-to-promote plaintiff must identify a specific position for which she applied and was rejected under circumstances giving rise to an inference of discrimination. 370 F.3d 423, 430 (4th Cir. 2004). But when an employer fails to make employees aware of vacancies, the application requirement may be relaxed because an employee cannot apply for a position she does not know exists. *See Williams*, 370 F.3d at 430-32. Likewise, a plaintiff may invoke the futile-gesture doctrine if she plausibly alleges that she would have applied but for an accurate knowledge that the employer's discrimination would result in rejection. *Id*. at 433. Those exceptions do not rescue the failure-to-promote theory pleaded in the operative Complaint.

As to the managerial position, Plaintiff alleges that she knew of the opportunity, inquired about being promoted, and was told she did not meet the qualifications. (DE 1 ¶ 21.) She does not allege that she applied, that Defendant failed to make the vacancy known to her, or that she would have applied but for a discriminatory barrier. As to the COO position, Plaintiff alleges that Defendant advertised the position on social media, that she saw the posting, and that when she later inquired, she was told the position had been filled. (*Id.* ¶¶ 30-31.) Those allegations likewise establish awareness of the vacancy, not the lack of notice

13

addressed in *Williams*. And while the Complaint alleges generally that some Caucasian employees obtained positions without applying or through positions created without an equitable selection process, it does not connect those general practices to a specific promotion Plaintiff sought but was prevented from pursuing because of race. (*Id.* ¶¶ 19, 27.)

The Court, therefore, agrees with the Report that the operative Complaint does not plausibly state a failure-to-promote claim. This conclusion does not impose the *McDonnell Douglas* prima facie case as a pleading requirement. Instead, it reflects the more basic Rule 8 requirement that the pleaded facts identify a particular denied promotion and plausibly connect the denial to race. *See Johnson*, 163 F.4th at 814.

The proposed amended complaint adds materially different allegations concerning a June 2024 Controller position, including that Plaintiff submitted a resume, interviewed, and was not selected in favor of a Caucasian candidate. (DE 13-1 ¶¶ 29-33.) Those allegations are not part of the operative Complaint and are not considered in resolving DE 7. Whether they should be permitted by amendment, are administratively exhausted to the extent exhaustion is required, or state a viable claim are questions reserved for DE 13.

Plaintiff's objection to the recommended dismissal of the failure-to-promote theory asserted in the operative Complaint is, therefore, overruled.

### 4. The operative Complaint does not plausibly state a discrete-act retaliation claim.

Plaintiff argues that the operative Complaint contains specific retaliation allegations, pointing principally to paragraphs 23 through 26 and 30 through 31. (DE

14

14 at 9.) She also relies in her objections on a June 2024 Controller application. But that allegation appears in the proposed amended complaint rather than DE 1 and is not considered in resolving the present motion. *See* DE 13-1 ¶¶ 29-33.

Filing an EEOC charge is protected activity, and Title VII's anti-retaliation provision reaches employer conduct that might dissuade a reasonable worker from making or supporting a discrimination charge. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006). Causation may be pleaded through close temporal proximity or through other facts showing continuing retaliatory conduct or animus during the intervening period. *Johnson*, 163 F.4th at 819-21; *Barnhill v. Bondi*, 138 F.4th 123, 132 (4th Cir. 2025). Temporal proximity also requires a plausible allegation that the relevant decision-maker knew of the protected activity before acting. *Johnson*, 163 F.4th at 820.

The operative Complaint alleges generally that after the January 2024 Charge, Defendant failed to promote Plaintiff, increased her duties, delayed evaluations and raises, and subjected her to heightened scrutiny. (DE 1 ¶ 23.) But it does not identify when most of those actions occurred, what duties were added, how the scrutiny changed, how long an evaluation or raise was delayed, or who made the challenged decisions. The Report, therefore, correctly treated those allegations as insufficiently developed under Rule 8. (DE 11 at 10-11.)

The Court separately considers the more specific allegation that, in meetings after the Charge, the CEO made comments that employees needed to be "in the boat" or "out the boat" and asked, in reference to Plaintiff, "Who would file a claim and still

15

be at a job you didn't like." (DE 1 ¶ 24.) That allegation plausibly shows management awareness of Plaintiff's protected activity and may suggest displeasure with it. Plaintiff relies on the comment as part of her retaliation theory. (DE 14 at 9.)

Even giving that allegation due weight, the operative Complaint does not connect the remark to a particular promotion, compensation decision, evaluation, or other discrete adverse action. It does not allege when the remark occurred relative to any specific decision, who made the challenged employment decisions, or that the CEO made or influenced them. *Johnson* underscores that causation requires more than generalized knowledge or animus; the pleadings must plausibly connect the protected activity to the adverse action. 163 F.4th at 819-21. The Complaint does not supply that connection for the discrete actions alleged here.

The reduced Christmas bonus is more specifically identified. (DE 1 ¶ 25.) But it allegedly occurred about eleven months after Plaintiff filed the January 2024 Charge. Without other allegations tying that particular decision to the Charge, temporal proximity alone does not support causation over that interval. *See Barnhill*, 138 F.4th at 132. Although intervening facts may bridge a longer gap, *Johnson*, 163 F.4th at 820-21, paragraph 24 does not identify when the CEO's comment occurred or allege that the CEO made or influenced the bonus decision. The Complaint, therefore, does not plausibly connect the bonus reduction to the protected activity.

Accordingly, the Court agrees with the Report that the operative Complaint does not state a plausible discrete-act retaliation claim.

16

**5.     The Court modifies the Report's analysis of retaliatory hostile work environment, but reaches the same result.**

The Report's analysis of the retaliatory-hostile-work-environment theory requires one modification. The Report asked whether the workplace was permeated with "discriminatory intimidation, ridicule, and insult" sufficiently severe or pervasive to alter the conditions of employment, relying on the traditional substantive hostile-work-environment formulation. (DE 11 at 12.) For a hostile environment based on retaliation, however, the Fourth Circuit applies a related but distinct standard.

In *Laurent-Workman v. Wormuth*, the Fourth Circuit held that a retaliatory hostile-work-environment claim requires allegations that the retaliatory conduct "(1) was unwelcome, (2) was sufficiently severe or pervasive that it would dissuade a reasonable worker from making or supporting a charge of discrimination, and (3) can be attributed to the employer." 54 F.4th 201, 217 (4th Cir. 2022). The court also instructed that the alleged reprisals must be considered in their totality: conduct that may not amount to much in isolation can, when viewed together, tell an actionable "multi-act story of undermining, gaslighting, and disruption." *Id.* at 218. *Barnhill v. Bondi* later applied the same standard while emphasizing that "petty slights or minor annoyances" remain insufficient. 138 F.4th 123, 140-41 (4th Cir. 2025). Because *Laurent-Workman* itself arose from a Rule 12(b)(6) dismissal, it supplies the principal pleading-stage guide here.

17

The Court, therefore, modifies the Report's reasoning on this issue and applies *Laurent-Workman.* Even under that standard, however, the operative Complaint does not plausibly allege a retaliatory hostile work environment.

Plaintiff alleges that, after she filed the January 2024 Charge, Defendant increased her duties, delayed evaluations and raises, subjected her to heightened scrutiny, reduced her Christmas bonus, revised the evaluation process in a manner that delayed her review and possible pay increase, discussed her discrimination claims with other employees, and made remarks in meetings about unhappy employees needing to leave. (DE 1 ¶¶ 23-26, 45; DE 14 at 7-9.) She also specifically alleges that the CEO asked, in reference to Plaintiff, "Who would file a claim and still be at a job you didn't like." (DE 1 ¶ 24.) The Court considers the bonus reduction, the CEO remark, and the other alleged post-Charge conduct together rather than asking whether any one act independently would sustain a retaliation claim.

The difficulty is not that each alleged act must independently amount to actionable harassment. It is that, apart from the CEO's remark and the allegation of a reduced bonus, the asserted course of retaliation is pleaded largely through labels rather than facts showing a sustained pattern. The Complaint does not allege what the heightened scrutiny entailed, how Plaintiff's duties changed, who delayed her evaluations or raises, how long the delays lasted, who discussed her claims with coworkers or in what manner, or how these acts related to one another. (DE 1 ¶¶ 23-26, 45.) The bonus allegation identifies an economic consequence, but it does not

allege who made that decision or any facts connecting that decision to the other alleged acts.

That distinguishes this pleading from *Laurent-Workman*. There, the complaint described a sustained series of concrete management actions after protected complaints, including erroneous reprimands, bogus denials of professional training, alteration of work product in a manner damaging to the plaintiff's reputation, unexpected additional responsibilities, and other acts of sabotage or interference. 54 F.4th at 218. Here, the CEO's alleged Charge-related remark is specific and relevant, and the Court has included the alleged bonus reduction in the totality. But the remaining generalized allegations lack the factual enhancement necessary to turn those two concrete allegations into a plausibly pleaded, sustained "multi-act story" of retaliatory interference. *See Iqbal*, 556 U.S. at 678-79. Considering the entire alleged course of conduct, the operative Complaint does not plausibly describe retaliation so severe or pervasive that it would dissuade a reasonable worker from making or supporting a charge of discrimination.

The Court, therefore, adopts the Report's recommended dismissal of the retaliatory-hostile-work-environment theory, but for the modified reasons stated here.

### 6.    Plaintiff's exhaustion objection does not alter the disposition.

Plaintiff also objects to the Report's exhaustion discussion, arguing that her hostile-work-environment allegations are reasonably related to the discrimination described in the January 2024 Charge. (DE 14 at 7-8.) That objection does not alter

19

the disposition of DE 7. The Report did not dismiss Plaintiff's post-Charge retaliation theories for lack of exhaustion; it treated those theories as properly before the Court and recommended dismissal for failure to state a claim. (DE 11 at 7, 10-12.)

The Report correctly recognized that retaliation arising from the filing of an earlier EEOC charge may, under *Nealon v. Stone*, be pursued without filing a second charge alleging retaliation for filing the first. 958 F.2d 584, 590 (4th Cir. 1992). (DE 11 at 7.) That is the retaliation theory the operative Complaint expressly invokes, and the Court has resolved that theory on the merits above.

To the extent the Report separately concluded that an independent race-based hostile-work-environment claim would fall outside the scope of the January 2024 Charge, the Court need not decide that issue to resolve DE 7. The operative Complaint asserts a single count for "Race and Retaliation" and expressly characterizes the alleged hostile environment as arising after Plaintiff filed the Charge and in retaliation for that protected activity. (DE 1 ¶¶ 40, 45, 48.) It does not clearly plead a separate substantive hostile-work-environment claim based on race. The Complaint also alleges that the referenced EEOC charge was "as amended," while the present Rule 12 record contains DE 7-2 rather than a complete administrative record concerning any amendment. (DE 1 ¶ 11.) The Court, therefore, does not adopt the Report's race-based hostile-environment exhaustion conclusion as an independent ground of dismissal. If a later operative pleading asserts a distinct theory, any exhaustion issue can be addressed on the pleading and administrative record properly before the Court at that time.

20

**7.    The pending Motion to Amend remains open for independent consideration.**

One final point warrants emphasis because of the procedural posture. This Order adjudicates DE 7 against the operative Complaint and does not adjudicate DE 13. Plaintiff contends that the proposed amended complaint supplies additional chronology and facts that cure the deficiencies identified in the Report. (DE 13; DE 23 at 1-6.) Defendant contends that amendment would be futile and raises additional exhaustion and pleading arguments. (DE 21.) Those Rule 15 issues have been fully briefed and are distinct from the Rule 12(b)(6) questions resolved here. The Court expresses no view in this Order as to the proper disposition of DE 13.

Accordingly, the discrimination and retaliation theories dismissed from the operative Complaint are dismissed without prejudice. That dismissal does not decide whether Plaintiff should receive leave under Rule 15 to assert those or other theories through DE 13. It likewise does not determine whether the proposed claims are exhausted or whether the proposed amended complaint states a claim.

The Motion to Amend remains referred to the Magistrate Judge for prompt consideration and disposition consistent with 28 U.S.C. § 636, the Federal Rules of Civil Procedure, and the Local Civil Rules. Once DE 13 is resolved, the operative scope of this action can be determined from the resulting pleading and any further motion practice directed to it.

## E.    Conclusion

For the foregoing reasons, it is **ORDERED** that:

1. Plaintiff's objections to the Report and Recommendation (DE 14) are OVERRULED;

2. Defendant's objections to the Report and Recommendation (DE 15) are OVERRULED;

3. the Report and Recommendation (DE 11) is ADOPTED AS MODIFIED by this Order;

4. Defendant's Motion to Dismiss (DE 7) is GRANTED IN PART AND DENIED IN PART;

5. the Motion to Dismiss is DENIED as to Plaintiff's Title VII race-discrimination claim arising from Defendant's handling and alleged denial of her November 2023 request to work from home;

6. the Motion to Dismiss is GRANTED as to the remaining discrimination and retaliation theories asserted in the operative Complaint, and those theories are DISMISSED WITHOUT PREJUDICE; this dismissal does not adjudicate Plaintiff's pending Motion for Leave to Amend (DE 13);

7. nothing in this Order adjudicates the merits of Plaintiff's Motion for Leave to Amend, including whether the proposed amendment cures the pleading deficiencies identified in this Order, whether any proposed claim has been administratively exhausted, or whether amendment would otherwise be futile;

8. Plaintiff's Motion for Leave to Amend (DE 13) REMAINS PENDING AND REFERRED TO THE MAGISTRATE JUDGE for prompt consideration and disposition consistent with 28 U.S.C. § 636, the Federal Rules of Civil Procedure, and the Local Civil Rules; and

9. because Plaintiff's work-from-home discrimination claim remains pending and the Motion to Amend has not been adjudicated, no final judgment shall be entered at this time.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
August 13, 2026